## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **MARTIN T. MEFFORD,** | ) | |
| Plaintiff | ) | |
| v. | ) | Civil Action No. 2:17cv00027 |
| | ) | **REPORT AND RECOMMENDATION** |
| **NANCY A. BERRYHILL,** | ) | |
| **Acting Commissioner of** | ) | By:  PAMELA MEADE SARGENT |
| **Social Security,** | ) | United States Magistrate Judge |
| Defendant | ) | |

### I. Background and Standard of Review

Plaintiff, Martin T. Mefford, ("Mefford"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2011, West 2012 & 2018 Supp.). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition. Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may

be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Mefford protectively filed his applications for DIB and SSI on July 23, 2013, alleging disability as of July 31, 2011, due to seizures, shortness of breath, mild chronic obstructive pulmonary disease, ("COPD"), and headaches. (R. at 253-55, 258-60, 282.) The claims were denied initially and upon reconsideration. (R. at 146-48, 153-55, 160-62, 167, 169-71, 173-78, 180-82.) Mefford then requested a hearing before an ALJ. (R. at 183-84.) The ALJ held a video hearing on February 19, 2016, at which Mefford was represented by counsel. (R. at 61-86.)

By decision dated March 8, 2016, the ALJ denied Mefford's claims. (R. at 45-56.) The ALJ found that Mefford met the nondisability insured status requirements of the Act for DIB purposes through June 30, 2015.[1] (R. at 47.) The ALJ found that Mefford had not engaged in substantial gainful activity since July 31, 2011, the alleged onset date. (R. at 47.) The ALJ found that the medical evidence established that Mefford had severe impairments, namely a seizure disorder and history of COPD, but he found that Mefford did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 48-49.) The ALJ found that Mefford had the residual functional capacity to perform

---

[1] Therefore, Mefford had to show that he was disabled between July 31, 2011, the alleged onset date, and June 30, 2015, the date last insured, in order to be eligible for DIB benefits.

medium work[2] that did not require exposure to hazards; that did not require driving; and that did not require more than occasional exposure to pulmonary irritants. (R. at 49.) The ALJ found that Mefford was able to perform his past relevant work as a cashier. (R. at 54.) In addition, based on Mefford's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Mefford could perform, including jobs as a hand packager, a café attendant, an assembler and a dishwasher. (R. at 55-56.) Thus, the ALJ concluded that Mefford was not under a disability as defined by the Act, and was not eligible for DIB or SSI benefits. (R. at 56.) *See* 20 C.F.R. §§ 404.1520(f) & (g), 416.920(f) & (g) (2018).

After the ALJ issued his decision, Mefford pursued his administrative appeals, (R. at 37-39), but the Appeals Council denied his request for review. (R. at 1-5.) Mefford then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2018). This case is before this court on Mefford's motion for summary judgment filed February 15, 2018, and the Commissioner's motion for summary judgment filed March 16, 2018.

## II. Facts

Mefford was born in 1963, (R. at 253, 258), which, at the time of the ALJ's decision, classified him as a "person closely approaching advanced age" under 20 C.F.R. §§ 404.1563(d), 416.963(d). Mefford has a tenth-grade education and past

---

[2]   Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2018).

relevant work as a roofer, an electrical grounder/helper, a stocker and a cashier. (R. at 66-69, 283.)  Mefford stated that he had not had a driver's license since 1987 due to numerous driving under the influence charges. (R. at 70.) He stated that he still consumed alcoholic beverages "[s]omewhat, not much." (R. at 70.) Mefford confirmed that, since 2014, he had been arrested three or four times for being drunk in public. (R. at 70-71.) He stated that he did not take any prescription medications. (R. at 71.) Mefford stated that he was in the "work pod" while he was incarcerated in 2013, which allowed him to work. (R. at 72-73.) He stated that he experienced one seizure a month. (R. at 73.) Mefford stated that he consumed a six-pack of beer twice a month. (R. at 73.) He stated that he lived with a friend and that he would spend 30 minutes to an hour a day feeding his friend's animals. (R. at 75-76.)

Asheley Wells, a vocational expert, was present and testified at Mefford's hearing. (R. at 81-85.) Wells was asked to consider a hypothetical individual of Mefford's age, education and work history, who had the residual functional capacity to perform medium and light work;[3] who could not work around hazards, hazardous machinery, unprotected heights or operational control of moving machinery; and who could occasionally be exposed to pulmonary irritants. (R. at 82.) Wells stated that such an individual could not perform any of Mefford's past work, with the exception of the cashier job. (R. at 82.) Wells stated that the individual could perform other jobs that existed in significant numbers in the national economy, including those of a hand packager at the medium exertion level; a cafeteria attendant, at the light exertion level; an assembler, at the light exertion level; and a dishwasher, at the medium exertion level. (R. at 82-83.) Wells stated that there would be no jobs available should the individual have no ability to

---

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2018).

relate to co-workers, to interact with supervisors, to deal with work stress and who would be absent from work more than two days a month. (R. at 83.)

In rendering his decision, the ALJ reviewed records from Dr. Michael Cole, D.O., a state agency physician; Norton Community Hospital; Wise County Behavioral Health; Wellmont Lonesome Pine Hospital, ("Lonesome Pine"); Dr. D. Kevin Blackwell, D.O.; Mountain View Regional Medical Center, ("Mountain View"); The Laurels; Dr. Jody Bentley, D.O.; and B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist. Mefford's attorney also submitted medical reports from Lonesome Pine and Mountain View to the Appeals Council.[4]

On August 21, 2008, Mefford presented to the emergency room at Mountain View for possible seizure activity. (R. at 375-84.) Mefford reported that he was found "balled over [without] seizure activity noted." (R. at 376.) Mefford was alert and oriented and was able to answer questions without confusion. (R. at 376.) Upon examination, Mefford's lungs were clear with equal breath sounds, bilaterally; he had normal joint range of motion with no swelling or deformities; his mental status examination was intact; motor examination was normal and symmetric; he had normal sensory throughout; and deep tendon reflexes were present and symmetric. (R. at 377.) An electrocardiogram, ("EKG"), was normal. (R. at 377.) It was noted that Mefford abused tobacco and alcohol. (R. at 375.) Mefford was diagnosed with transient loss of consciousness and possible seizure disorder. (R. at 378.)

---

[4] Since the Appeals Council considered and incorporated this additional evidence into the record in reaching its decision, (R. at 1-5), this court also must take these new findings into account when determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991).

In May 2011, Mefford presented to the emergency room at Lonesome Pine for complaints of a seizure. (R. at 387-88.) He reported loss of consciousness and confusion. (R. at 387.) Mefford reported "heavy" alcohol consumption. (R. at 387.) He was diagnosed with seizure, syncope and hypernatremia, a low level of sodium in his blood. (R. at 388.) On May 18, 2011, Mefford presented to the emergency room for complaints of syncope. (R. at 447-48.) X-rays of Mefford's chest showed mild COPD. (R. at 386.) Mefford left against medical advice and without being seen. (R. at 448.)

On June 27, 2011, Mefford reported that his attorney referred him to see Dr. Jody Bentley, D.O., to create care for his disability. (R. at 412, 416.) Mefford reported that he consumed 12 beers a day. (R. at 412.) He stated that he had been depressed and had suicidal ideations. (R. at 412.) A temporary detention order was obtained, and Mefford was admitted to The Laurels for inpatient treatment and detoxification. (R. at 390-94, 412.) Dr. Bentley diagnosed seizures and suicidal ideations. (R. at 416.) Mefford remained in treatment for 11 days and was given a regular discharge on July 7, 2011. (R. at 392.) Upon discharge, Mefford was diagnosed with alcohol dependence and assessed a then-current Global Assessment of Functioning, ("GAF"),[5] score of 60.[6] (R. at 392.) It was recommended that Mefford attend Alcoholics Anonymous for continued treatment. (R. at 392.) On July 8, 2011, Mefford was seen at Wise County Behavioral Health and reported that he had used alcohol since the age of 20. (R. at 396.) He reported that his stay at The Laurels helped him with his withdrawal symptoms. (R. at 396.)

---

[5] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[6] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning...." DSM-IV at 32.

On July 18, 2011, Mefford saw Dr. Bentley for complaints of sternum pain after falling. (R. at 408.) He reported that he had been alcohol free for 14 days. (R. at 408.) Mefford requested medication for depression. (R. at 408.) On December 20, 2011, Mefford stated that he lost two jobs due to his seizure disorder. (R. at 405.) Mefford reported that he had never taken medication for his seizures and that he had not seen a neurologist. (R. at 405.) He stated that he had to serve 30 days in jail for contempt of court. (R. at 405.) Dr. Bentley diagnosed seizure disorder; history of alcohol abuse; increased transaminases, showing possible liver damage; hyponatremia; tobacco abuse; COPD; depression and anxiety; and pre-hypertension. (R. at 405.) Mefford was advised to stop consuming alcohol. (R. at 405.)

On July 2, 2012, Mefford presented to the emergency room at Lonesome Pine after getting struck in the left side of his head while cutting brush. (R. at 355-57.) The lesion was sutured. (R. at 357.) He was diagnosed with foreign body granuloma of the skin. (R. at 357.) The sutures were removed on July 10, 2012. (R. at 350-54.)

On July 17, 2012, Mefford reported to Dr. Bentley that his last seizure was in December 2011 while incarcerated. (R. at 402.) Dr. Bentley diagnosed seizure disorder; anxiety; depression; COPD; tobacco abuse; and elevated blood pressure. (R. at 402.)

On May 31, 2013, Mefford presented to the emergency room at Norton Community Hospital after injuring his left hand after falling. (R. at 323-30.) He had swelling and ecchymosis of the left thumb, and he had an appropriate affect and mood. (R. at 325.) An x-ray of Mefford's left hand was normal. (R. at 330.) He

was diagnosed with questionable left thumb sprain and subluxation of the first carpometacarpal joint. (R. at 323.)

On June 21, 2013, Mefford presented to the emergency room at Lonesome Pine for possible seizures, nausea and vomiting. (R. at 334-49.) It was noted that there was no reliable history to fully describe seizure activity. (R. at 337.) Mefford's mental status, neurological examination and functional capacity were within normal limits. (R. at 336-37.) Mefford reported a daily alcohol consumption of six to eight beers. (R. at 337.) He was diagnosed with alcohol problems, hematuria, seizures and vomiting, improved. (R. at 341-44.)

On September 25, 2013, Dr. D. Kevin Blackwell, D.O., examined Mefford at the request of Disability Determination Services. (R. at 364-68.) Mefford complained of seizures, headaches, blurred vision and COPD. (R. at 364.)  Dr. Blackwell reported that Mefford did not appear to be in any acute distress; he was alert, cooperative and oriented with good mental status; his affect, thought content and general fund of knowledge were intact; his inspiratory and expiratory effort was good with no labored breathing; he had a symmetrical and balanced gait; shoulder and iliac crest heights were good and equal bilaterally; upper and lower joints had no effusions or obvious deformities;  upper and lower extremities were normal for size, shape, symmetry and strength; grip strength was 5/5 and equal, bilaterally; fine motor movement and skill activities of the hands were normal; and reflexes in the upper and lower extremities were good and equal, bilaterally. (R. at 365-66.) X-rays of Mefford's chest showed no significant pulmonary abnormality. (R. at 361.) Dr. Blackwell diagnosed seizure disorder, atypical; and COPD, by history. (R. at 366.)

Dr. Blackwell opined that Mefford could sit for up to eight hours in an eight-hour workday; stand for up to two hours, assuming normal positional changes; reach above head with both upper extremities for up to one-third of the workday; operate foot controls with both lower extremities up to one-third of the workday; he should avoid crouching, crawling, unprotected heights and repetitive and continuous stair climbing; he could occasionally lift items weighing up to 40 pounds and frequently lift items weighing up to 10 pounds; and he could perform squatting activities up to one-third of the workday, but kneeling activities should be "avoid[ed] [a] certain amount of the day." (R. at 366.) Dr. Blackwell noted no vision, communication, hearing or environmental limitations. (R. at 366.) He also stated that Mefford had no limitation of hand usage, including fine motor movement and skill activities. (R. at 366.) Dr. Blackwell reported that, due to the unpredictability of Mefford's blackout spells, consideration to safety hazards should be given. (R. at 366.)

On October, 22, 2013, Dr. Michael Cole, D.O., a state agency physician, opined that Mefford had no exertional limitations. (R. at 98-99.) He found that Mefford had an unlimited ability to stoop and kneel; he could occasionally climb ramps and stairs, balance, crouch and crawl; and never climb ladders, ropes or scaffolds. (R. at 98.) No manipulative, visual or communicative limitations were noted. (R. at 99.) Dr. Cole reported that Mefford should avoid all exposure to hazards. (R. at 99.)

On January 23, 2014, Mefford was admitted to Lonesome Pine for persistent nose bleeds. (R. at 431-46.) He was in no respiratory distress, and his breath sounds were clear without rales, rhonchi or wheezing; his neurological, musculoskeletal and psychiatric examinations were normal. (R. at 439.) Mefford underwent a bilateral control of anterior and posterior nosebleeds. (R. at 435.)

On May 14, 2015, Mefford presented to Mountain View for complaints of vomiting blood. (R. at 450-54.) Mefford stated that he fell two days previously and injured his back. (R. at 450.) Dr. Jack K. Cox, II, M.D., reported that Mefford's examination was normal. (R. at 451-52.) Dr. Cox diagnosed rib pain and hematemesis, or vomiting blood. (R. at 452.) That same day, Mefford was admitted for hematemesis; coffee grounds emesis; chronic alcoholism; and chronic nicotine dependency. (R. at 453-57.) A CT scan of Mefford's abdomen and pelvis showed gastric wall thickening with suspect ulcer, emphysematous COPD and extensive atherosclerosis throughout the abdominal aorta, iliac and femoral vessels. (R. at 465.) X-rays of Mefford's right ribs showed COPD. (R. at 466.) Mefford was discharged the following day with a diagnosis of probable acute alcoholic gastritis. (R. at 454.)

On February 11, 2016, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Mefford at the request of Mefford's attorney. (R. at 418-26.) Mefford reported that his driver's licensed had been revoked due to a "habitual DUI." (R. at 419.) He reported that he smoked one and one-half packs of cigarettes a day. (R. at 420.) Mefford reported that, when he was younger, he used "marijuana, LSD, cocaine, etc." (R. at 420.) He reported that he was arrested and convicted of distribution and was incarcerated for four months. (R. at 420.) Lanthorn reported that Mefford's grooming and hygiene were adequate; he was able to recall four out of five words presented to him after 10 minutes; he correctly performed Serial 7's; he gave higher order and correct interpretation to one out of three commonly used adages; he was able to spell the word "world" correctly both forward and backwards; his affect was flat and blunt; his eye contact was "so-so;" his overall mood was "probably" depressed; and he showed signs of anxiety. (R. at 421-22.) The Wechsler Adult Intelligence Scale - Fourth Edition, ("WAIS-IV"), was administered, and Mefford obtained a full-scale IQ score of 74. (R. at 422.)

Lanthorn diagnosed major depressive disorder, recurrent, moderate to severe, with anxious distress, moderate or greater. (R. at 424.)

On February 16, 2016, Lanthorn completed a mental assessment, indicating that Mefford was only slightly limited in his ability to understand, remember and carry out simple job instructions and to maintain personal appearance. (R. at 427-29.) He opined that Mefford had a satisfactory ability to follow work rules; to function independently; to maintain attention and concentration; to understand, remember and carry out detailed job instructions; to behave in an emotionally stable manner; to relate predictably in social situations; and to demonstrate reliability. (R. at 427-28.) Lanthorn opined that Mefford was seriously limited in his ability to relate to co-workers; to deal with the public; to use judgment; to interact with supervisors; to deal with work stresses; and to understand, remember and carry out complex job instructions. (R. at 427-28.) He opined that Mefford would be absent from work more than two days a month. (R. at 429.)

On August 26, 2016, Mefford reported to James Kegley, M.S., a counselor with Wise County Behavioral Health, that he experienced irritability, anxiety, panic attacks and avoidance behavior. (R. at 9-32.) He reported that he did not like being around people and that he was easily irritated. (R. at 9.) Mefford stated that "I'm able to work, but I'm afraid to work." (R. at 9.) It was noted that Mefford had a history of substance abuse, with use in the past 12 months. (R. at 10, 15.) Mefford reported no major health problems other than ulcers and acid reflux. (R. at 13.) Mefford was diagnosed with unspecified anxiety disorder; alcohol use disorder, moderate; and tobacco use disorder, moderate. (R. at 22.) On September 8, 2016, Mefford reported to Kegley that his anxiety started after he experienced his first seizure in 2007. (R. at 7.) When asked about his alcohol consumption, Mefford stated that it had never caused him any physical problems. (R. at 7.) He

further stated that, "I don't even drink whiskey anymore." (R. at 7.) Mefford reported that he tried to keep his alcohol consumption to a six-pack of beer and that he tried not to consume alcohol every day or before noon. (R. at 7.) Kegley reported that Mefford's mood was mildly depressed with congruent affect. (R. at 7.)

## III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2018). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2018).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2011, West 2012 & 2018 Supp.); *McLain v. Schweiker*, 715 F.2d 866, 868-

69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(c), 416.927(c), if he sufficiently explains his rationale and if the record supports his findings.

Mefford argues that the ALJ failed to give full consideration to the findings of Dr. Blackwell and Lanthorn when determining his residual functional capacity. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 4-6.)

In particular, Mefford argues that the ALJ improperly rejected Dr. Blackwell's opinion. (Plaintiff's Brief at 4-5.) Although Dr. Blackwell opined that Mefford was incapable of lifting more than 10 pounds frequently or standing for more than two hours, his physical examination documented that Mefford did not appear to be in any acute distress; he was alert, cooperative and oriented with good mental status; his affect, thought content and general fund of knowledge were intact; his inspiratory and expiratory effort was good with no labored breathing; he had a symmetrical and balanced gait; shoulder and iliac crest heights were good and equal, bilaterally; upper and lower joints had no effusions or obvious deformities;  upper and lower extremities were normal for size, shape, symmetry and strength; grip strength was 5/5 and equal, bilaterally; fine motor movement and skill activities of the hands were normal; and reflexes in the upper and lower extremities were good and equal, bilaterally. (R. at 365-66.)  The ALJ noted that he was giving Dr. Blackwell's opinion "little" weight because it was inconsistent with his own clinical findings and with the other medical evidence of record. (R. at 52, 54.)  *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (ALJ should discount opinions that are inconsistent with the record); *see also Craig v. Chater*, 76 F.3d at 585, 590 (4th Cir. 1996) ("if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").  Dr. Blackwell's own notes show little, if any, evidence that Mefford suffered from any impairment that would affect his physical residual functional capacity and support the ALJ's weighing of Dr. Blackwell's opinions.

In addition, the record shows that Mefford was first diagnosed with a "possible seizure disorder" in August 2008. (R. at 378.) In May 2011, Mefford was diagnosed with seizures after reporting a loss of consciousness and confusion. (R. at 387.) He also reported "heavy" alcohol consumption. (R. at 387-88.) X-rays of

Mefford's chest showed mild COPD. (R. at 386.) Physical examinations between July 2011 and July 2012 were consistently normal, (R. at 402, 405, 408), and physical examinations during emergency room visits were unremarkable, showing strong and equal extremity strength, clear lungs, normal mental status and no neurological deficits, loss of strength, sensory deficits, edema, headache, visual disturbance or muscle weakness. (R. at 325, 336-38, 356-57, 456-57.) In July 2012, Mefford reported that he had not had a seizure since December 2011. (R. at 402.) In June 2013, Mefford was seen at the emergency room for "possible" seizures. (R. at 334-49.) It was noted that there was no reliable history to fully describe seizure activity. (R. at 337.) Mefford reported consuming six to eight beers a day. (R. at 337.) In September 2013, x-rays showed no significant pulmonary abnormality, and Mefford's inspiratory and expiratory effort was good with no labored breathing. (R. at 361, 365.)   In January 2014, Mefford was in no respiratory distress, his breath sounds were clear without rales, rhonchi or wheezing, and his neurological and musculoskeletal examinations were normal. (R. at 439.) In May 2015, a CT scan showed emphysematous COPD. (R. at 465.) There is no evidence to indicate that Mefford was prescribed medication for his seizure disorder. (R. at 71.) Furthermore, the record shows that Mefford prepared meals; laundered clothing; tended to personal care needs; performed household chores; walked for enjoyment; shopped in stores; and worked as an apartment cleaner, on a road crew cutting brush and worked for a painting company after his alleged disability onset date. (R. at 71-73, 421.)   Thus, the record as a whole supports the ALJ's decision giving Dr. Blackwell's opinion little weight.

The ALJ noted that he was giving the state agency physicians' assessments "some" weight. (R. at 52, 54.) Drs. Cole and Godwin found that Mefford could perform work at all exertional levels; however, the ALJ gave Mefford the benefit of the doubt and further restricted him to the performance of medium work with

additional environmental limitations due to his neurological and pulmonary issues. (R. at 52, 110-12, 136-38.) Based on this, I find that substantial evidence supports the ALJ's finding with regard to Mefford's physical residual functional capacity.

Mefford also argues that the ALJ failed to give full consideration to the findings of Lanthorn when determining his mental residual functional capacity. (Plaintiff's Brief at 5-6.) The ALJ noted that he was discrediting Lanthorn's opinion because it was prepared in anticipation of Mefford's hearing and because Lanthorn relied exclusively on Mefford's subjective complaints. (R. at 53-54.) In addition, the ALJ found that the other evidence of record did not support any mental health limitations. (R. at 53.)

The ALJ found that Mefford underwent an evaluation with Lanthorn, not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence solely to aid his claim for disability benefits. (R. at 53, 418.) *See Holman v. Astrue*, 2012 WL 2678933, at *7 (M.D. Tenn. May 31, 2012) ("Because Dr. Blevins only examined Plaintiff one time, at the request of his attorney, specifically for the purposes of determining Plaintiff's ability to perform work-related activities, and because his findings were inconsistent with the records of Plaintiff's treating physician, Plaintiff's medical history, and the medical opinions of Drs. Payne and Gregory, the ALJ properly accorded little weight to Dr. Blevins' opinion.").

The ALJ also noted that Lanthorn's opinion was inconsistent with Mefford's lack of mental health treatment. (R. at 53.) Treatment notes dated prior to Lanthorn's opinion show a diagnosis of depression/anxiety and alcoholism. (R. at 53, 405, 408.) While Dr. Bentley diagnosed depression and anxiety, his examination notes failed to document significant objective mental findings. (R. at

-16-

402, 405, 408.) In addition, emergency room progress notes consistently document that Mefford was cooperative and had a normal mental status. (R. at 325, 336, 350-51, 388, 439, 447, 451-52, 457.) Furthermore, in July 2011, Mefford was oriented to all spheres, denied suicidal or homicidal ideation and had coherent and logical thought processes. (R. at 396.) In September 2013, Dr. Blackwell noted that Mefford had good mental status. (R. at 365.) In February 2016, Lanthorn noted that Mefford had adequate grooming and hygiene; he was able to recall four out of five words presented to him after 10 minutes; he correctly performed Serial 7's; he gave higher order and correct interpretation to one out of three commonly used adages; and he was able to spell the word "world" correctly both forward and backwards. (R. at 421-22.) Accordingly, I find that substantial evidence exists to support the ALJ's weighing of the medical evidence.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.    Substantial evidence exists in the record to support the ALJ's weighing of the medical evidence;

2.    Substantial evidence exists in the record to support the ALJ's finding with regard to Mefford's residual functional capacity; and

3.    Substantial evidence exists in the record to support the Commissioner's finding that Mefford was not disabled under the Act and was not entitled to DIB and SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Mefford's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2018):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:    October 11, 2018.

_s/ Pamela Meade Sargent_

UNITED STATES MAGISTRATE JUDGE